TYNDALE PALMER, Appellant, *v.* E. P. BAILEY & Co., Respondent.

*Libel — evidence required to sustain a justification — hearsay.*

In an action for libel, the testimony of a witness that he had examined the books of a company, and had learned from them and the statements of an officer of the company that some half million of dollars had been paid for a patent right, which, it was charged in the alleged libel, the plaintiff, while acting as agent for the owner thereof, had sold for that sum and kept all thereof except some $80,000, is hearsay, does not in any way connect the plaintiff with the transaction, and is incompetent under a defense of justification.

Such evidence might possibly have been admissible as bearing upon the good faith of the defendant in interposing the defense of justification, but the court having instructed the jury that there was evidence in the case for them to consider upon the question of justification, and this being the only evidence relating to that subject, it required a reversal of a judgment in favor of the defendant, as the jury might have been influenced by it.

APPEAL by the plaintiff, Tyndale Palmer, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Oneida on the 20th day of March,

1896, upon the verdict of a jury for twenty-five dollars, rendered after a trial at a Trial Term of the Supreme Court held in and for the county of Oneida, and also from an order entered in said clerk's office on the 5th day of March, 1896, denying the plaintiff's motion for a new trial made upon the minutes.

The defendant is a corporation duly organized and existing under and by virtue of the laws of this State, with its principal place of business in the city of Utica; and as such is the owner, proprietor and publisher of a daily newspaper known as the *Utica Daily Observer*.

On the 3d day of October, 1892, there appeared in the defendant's paper the following article, viz. :

"THEY STOLE THEMSELVES RICH."

"PHILADELPHIA, Oct. 3. — The theft of $440,000 from the Auer Incandescent Light Company, by Tyndale Palmer, a former Philadelphia newspaper man, in which he was joined by a hotel keeper named Freitas,* of Rio Janeiro, has just been brought to light. The company is owned solely by A. O. Granger, the president, and ex-Senator Joseph M. Gazzam, the vice-president. They formed the South American Welsbach Incandescent Light Company, and sent young Palmer to Rio to boom the invention. He and Freitas* sold the patent rights for $510,000 in gold, and upon Palmer's return he reported the sale as having been made for $80,000, of which $10,000 was expended in his salary, expenses and commission.

"The theft was not learned until two other men were sent to Brazil on a second mission, although reports had reached the ears of the company. Palmer was sent to England to negotiate securities of one of ex-Senator Gazzam's iron companies, and upon demanding a higher commission was dismissed. Palmer cannot be returned from England, but action is being taken to recover sums which he expended in buying farms for relatives.

"The second trip was made to Brazil to sell improvements on the original Welsbach invention, which caused the title to be changed to the Auer Company."

A few weeks after the publication of this article the plaintiff addressed a letter to the defendant, calling attention to the article

---

\* *Sic.*

published, stating that it was absolutely false, and asking both for reparation and retraction. This letter resulted in some further correspondence between the parties, but without effecting any settlement, and thereafter this action was brought, in which the plaintiff demanded judgment for the sum of $25,000 on account of the publication by the defendant of the article referred to.

In due course of time the defendant answered the plaintiff's complaint, in which the publication of the objectionable article was admitted, but such publication was justified and the truth thereof asserted. Facts were also alleged by way of mitigation, and certain other defenses were interposed, to which it will not be necessary to more specifically refer.

The issues thus joined came on for trial at the Oneida Trial Term in March, 1896, and a verdict in favor of the plaintiff for the sum of twenty-five dollars was rendered. Thereafter a motion was made by the plaintiff upon the minutes of the court for a new trial, which was denied, and from the order denying the same, as well as from the judgment which was subsequently entered upon the verdict, this appeal was taken.

*S. R. Ten Eyck*, for the appellant.

*Edward H. Wells*, for the respondent.

ADAMS, J.:

The statements contained in the article published in the defendant's paper, unless true, were unquestionably libelous *per se*. And this proposition is disputed by no one. But, upon the trial, the defendant endeavored to make good its defense of justification, and also to prove certain facts by way of mitigation. This attempt upon the part of the defendant resulted in various exceptions being taken by the plaintiff to evidence which was offered and received, and also to certain propositions of law which were charged by the learned trial court, as well as to the refusal of the court to charge in accordance with sundry requests which were made by the plaintiff's counsel.

Some of these exceptions present questions which, did we deem their determination necessary to the proper disposition of this appeal, possess sufficient importance and interest to make them worthy of

careful and critical examination; but, upon reviewing the record furnished us, we are so impressed with the necessity of directing a new trial, in consequence of error committed by the trial court in the admission of incompetent evidence which bore upon the defense of justification, that we pass at once to the consideration of the exception which presents the error we have in mind.

In considering this subject it is to be noted that, while facts are alleged in the defendant's answer with the obvious design of establishing the truth of the entire article published, the justification attempted upon the trial was not as comprehensive in its scope as were the facts alleged. For instance, the article, inferentially, at least, charges the plaintiff with being a fugitive from justice, and remaining in England, between which and this country it is said no extradition treaty then existed; and in this connection it is also stated that steps were being taken to recover from the plaintiff sums which he had expended in buying farms for his relatives; but at the trial no attempt whatever was made to establish the truth of these charges, or either of them. Some evidence was, however, offered which it was claimed by the defendant did legitimately tend to prove the truth of the main charge, to wit, that the plaintiff, in company with one de Freitas, stole from the Auer Incandescent Light Company the sum of $440,000. This evidence consisted solely of the testimony of a witness by the name of Herbert E. White, who was permitted, over the plaintiff's objection, to swear that he was sent to Rio Janeiro by his brother, who was the superintendent of the Incandescent Light Company, and that while there he examined the books of the "Banco Septentrional," which was the successor of the Brazilian Welsbach Light Company, which was the company to which the plaintiff sold the patent rights, and that he learned from such examination that this company had paid for the Welsbach light patent somewhere in the neighborhood of half a million dollars. The same witness was in like manner permitted to repeat statements there made to him by one Chaves, an officer of the company, relating to the money paid and the disposition made thereof, but he likewise testified that there was nothing, either in the books or in the declarations of Mr. Chaves, which connected the plaintiff in any manner with the transaction. When this

evidence was first offered it was duly objected to by the plaintiff's counsel, whereupon the court asked the defendant's counsel whether it was offered upon the theory of justification or mitigation. The latter replied that he offered it for the purpose of establishing a justification, so far as he could, and also as bearing upon the defendant's good faith in the conduct of the action. The evidence was thereupon admitted, the court remarking that it would receive the same upon the question of good faith; and upon a second objection being interposed, the court stated that, while not very clear upon the subject, it would receive the evidence for what it was worth.

Thereafter the plaintiff's counsel moved to strike out the evidence of this witness, which motion was denied and an exception was taken, and, after the trial judge had concluded his instructions to the jury, the plaintiff's counsel requested the court to charge the jury that the evidence offered by the defendant in support of the plea of justification was insufficient for that purpose, and that that defense was unproven. This request was refused, to which refusal the plaintiff's counsel duly excepted.

We have made careful examination to discover, if possible, any evidence which can fairly be regarded as sustaining the plea of justification, but we find none, save that furnished by the witness White, and this, we think, is hardly sufficient for that purpose. That it was clearly incompetent, we entertain no doubt, for, at most, it was merely hearsay, and did not in any way tend to connect the plaintiff with the matters testified to. It might possibly have been admissible as bearing upon the good faith of the defendant in interposing the defense of justification (*Youmans* v. *Paine*, 86 Hun, 479; *Marx* v. *The Press Pub. Co.*, 134 N. Y. 561) had it been limited to that object; but it will be seen by reference to the charge that the learned court instructed the jury that there was evidence in the case for them to consider upon the question of justification, and as this was the only evidence which had even a remote relation to that subject, it follows that improper use was made of the same.

It is urged by the defendant's counsel that the exceptions which we have considered furnish no ground for reversal, for the reason that the jury were instructed by the learned trial court that, if justification was established to their satisfaction, their verdict should be for the defendant; and that, since the verdict rendered was for

the sum of twenty-five dollars only, it amounts to a demonstration that they did not regard that defense with favor. We think, however, that inasmuch as the jury were permitted to consider the question at all, it is impossible, under the circumstances of this case, for the court to determine to what extent they were misled and influenced thereby in the conclusion which they ultimately reached, and for that reason we have determined, as already indicated, that a new trial must be granted.

All concurred.

Judgment and order reversed and a new trial ordered, with costs to abide the event.