PEOPLE v. SMITH.

(Supreme Court, Appellate Division, Fourth Department. February 3, 1899.)

1. ARSON—EVIDENCE—COMPETENCY.
    Where, on a trial for arson, accused offers himself as a witness, and on cross-examination is asked if he was not living in open adultery, and, without claiming his privilege, answers in the affirmative, such answer is competent, as bearing on his credibility.

2. SAME—STATEMENTS OF PROSECUTION—PREJUDICE
    The prosecution, in rehearsing facts it expected to prove on a trial for arson, stated that it would be shown that many other buildings in which accused was interested were destroyed in a similar manner. Held not prejudicial to accused, since he was charged in the same indictment with conspiracy with his father to defraud insurance companies by burning their buildings; and such statements, if offered in evidence, were admissible as establishing a fraudulent intent of accused.
    Hardin, P. J., and Follett, J., dissenting.

Appeal from Monroe county court.

James O. Smith was convicted of arson, and, from the judgment and an order denying a motion for a new trial, he appeals. Affirmed.

Defendant was indicted jointly with his father, James Smith, for the crime of arson in the second degree, by the grand jury of Monroe county, in January, 1897. A motion was made to quash the indictment, which was denied, and a demurrer was interposed to the indictment, and overruled; and, after the defendant had pleaded not guilty, a trial was had in the county court of Monroe county, before a jury, and a verdict of guilty was rendered. A motion for a new trial was made and denied. Defendant was sentenced to be imprisoned in the state prison at Auburn for the period of nine years, where he is now serving out his sentence. He appeals from the judgment of conviction, and also from the order denying his motion for a new trial, and gives notice of his intention to bring up for review the order overruling and disallowing the demurrer to the indictment, and also the order denying his motion to quash the indictment.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, McLENNAN, and SPRING, JJ.

Chamberlain & Page, for appellant.
W. A. Matson, Asst. Dist. Atty., for the People.

ADAMS, J. Of the various reasons assigned by the learned counsel for the defendant why the judgment of conviction in this case should be reversed, there are but two which, as I view it, seem to require serious consideration. Upon the trial the defendant offered himself as a witness in his own behalf, and upon his cross-examination he was asked by the prosecuting attorney if he had not for five or six years

past been living in criminal intercourse with a certain woman, whose name was given, and when, upon stating that he did not know what was meant by that term, he was asked whether or not he had not had intercourse with this woman, he answered, "I might have." This evidence was received under objection, and the exception taken to its reception raises one of the questions upon which counsel apparently places great reliance.

The right of a party charged with the commission of a crime to testify in his own behalf is one which did not exist under the common law, nor was it conferred by statute until a comparatively recent period; but, now that the right does exist, a party who avails himself of it, and enters the witness box, stands in precisely the same situation as any other witness, and upon his cross-examination may be required, unless he claims his privilege, to answer any and every question which tends to affect his credibility. This rule is too well settled to require the citation of authorities, but the reason for it is quite fully discussed in People v. Irving, 95 N. Y. 541, People v. Tice, 131 N. Y. 651, 30 N. E. 494, and People v. Webster, 139 N. Y. 73–84, 34 N. E. 730. The extent to which the cross-examination of a party may be permitted is, of course, a matter of discretion with the trial court, but it should always be confined to inquiries as to particular facts which may legitimately tend to discredit him as a witness. People v. Brown, 72 N. Y. 571. In the case under consideration, the defendant, upon his direct examination, had, in the most unequivocal manner, contradicted the evidence of various witnesses upon the part of the prosecution, tending to connect him with the offense charged in the indictment; and when asked upon his cross-examination if he was not living in open adultery with a female, although he had a wife, from whom he had never obtained a divorce, instead of claiming his privilege, he, as we have seen, answered the question in the affirmative. This answer certainly tended to affect his moral character, and consequently I do not see why it did not bear directly upon his credibility as a witness, and, if so, why the evidence was not perfectly competent and proper.

The other reason to which reference has been made is one which at first glance would seem more serious, and yet it is one which upon mature reflection I am persuaded is not sufficient to justify this court in granting the defendant a new trial. It appears that, in opening the case to the jury, the learned attorney for the prosecution, in rehearsing the facts which he expected to prove, used this language:

"We shall show you, if permitted, that before this fire which occurred at the boulevard, in which some seven buildings owned by the mother and family of this defendant were burned, many other buildings which this defendant had assisted in erecting, or in which he was interested, were destroyed in a similar manner. Within less than a year before the fire on the boulevard—"

Before this statement was completed, the counsel for the defendant raised the objection that it was improper. This objection was, however, overruled by the court, to which ruling an exception was taken; whereupon the prosecuting attorney remarked: "If counsel insists upon it, I will not go into the matter at this time." It is now contended that the statement objected to related to proof which the

people claimed to possess of the commission by the defendant of independent crimes, which were irrelevant to the issue, and which, therefore, could in no view of the case become competent; that, by overruling this objection, the court virtually intimated to the jury that such proof was competent, and that such an intimation must necessarily have been highly prejudicial to the defendant. · If it be conceded that proof of this character would have been irrelevant and improper if offered on behalf of the people, it would still be exceedingly doubtful, in my opinion, whether the defendant's exception possesses the merit claimed for it; for I am unable to see how, in the circumstances of the case, the ruling of the trial court can be regarded as prejudicial error. Suppose, by way of illustration, that the district attorney had called a witness, and attempted to prove by him the facts stated in his opening, and the trial court had held, notwithstanding the defendant's objection, that such proof was competent; would it be contended that this ruling would involve error requiring a reversal of the judgment, if the district attorney, instead of acting upon it, . had dismissed the witness, without insisting upon an answer to his inquiry? I hardly think so, and yet the implication that such evidence was competent would be quite as strong in the case suggested as in the case in hand. But just here the inquiry which naturally suggests itself is, why, in the peculiar circumstances of this case, would evidence of this character have been incompetent had it been offered? The indictment under which the defendant was tried charged him and his father, James Smith, who died before the present trial took place, with having set fire to certain buildings therein specifically mentioned; and it contained two counts, the first of which alleged facts constituting the crime of arson in the second degree, as defined by subdivision 3 of section 487 of the Penal Code; while the averments contained in the second count were obviously designed to bring the case within the provisions of subdivision 1 of section 488, which defines the crime of arson in the third degree, the essential allegations of the second count being that the buildings in question were insured against loss or damage by fire, and that they were burned by the defendant and his father, "with the intent then and there unlawfully and feloniously to prejudice the insurers thereof." In other words, the defendant, although indicted for the crime of arson, pure and simple, also stood charged with the crime of having conspired with his father to cheat and defraud certain insurance companies, by setting fire to and causing the destruction of various buildings upon which they had previously obtained insurance from those companies. In order, therefore, to convict the defendant of the crime set out in the second count, it was of the utmost importance that a fraudulent motive or intent upon his part should be established; and, to that end it was competent, I think, for the people to show that, shortly previous to the commission of this particular act, the defendant had been guilty of similar acts under like circumstances, although one effect of such evidence might be to prove other crimes than the one charged in the indictment.

It is well settled that evidence of this character is perfectly competent upon the trial of an indictment for forgery by uttering a forged.

check. People v. Everhardt, 104 N. Y. 591, 11 N. E. 62; People v. Altman, 147 N. Y. 473, 42 N. E. 180. So, too, in cases where parties are charged with obtaining money under false pretenses, or with having received stolen property, knowing it to have been stolen, evidence that the accused had made similar representations to other parties, or had received similar articles under like circumstances, is always proper upon the question of evil motive or fraudulent intent. Weyman v. People, 4 Hun, 511; People v. Jefferey, 82 Hun, 409, 31 N. Y. Supp. 267; People v. Copperman, 56 N. Y. 591; Mayer v. People, 80 N. Y. 364.

The case of People v. Dimick, 107 N. Y. 13–32, 14 N. E. 178, 185, is in principle, if not in its facts, analogous to the one under consideration. There the crime alleged was larceny, and one of the counts of the indictment charged, in substance, that the defendant, with intent to deprive a marine insurance company, of which his firm was the agent, of its property, and to appropriate the same to his own use, feloniously, falsely, and fraudulently represented to the company that it had, through the firm, insured the cargo of a vessel for the sum of $5,000, for the benefit of some person unknown; that a loss had occurred, whereby the insurance company had become liable to pay the amount of the insurance; and that, in consequence of such representations, the company paid over to the defendant the sum of $4,975. Upon the trial the people were allowed to give evidence, under objection and exception, that the defendant, during the same season in which the alleged crime was committed, had committed other similar frauds; and, in considering the propriety of this character of evidence, it was said by Earl, J.:

"Here it was unnecessary for the people to show the evil motive and fraudulent intent of the defendant in changing the insurance upon the cargo of the Wade, after knowledge of the loss, from the Continental to the Thames and Mersey; and, for the purpose of showing the motive and intent, it was competent for the people to show that the defendant had done other similar acts, although it might thus be shown that he was guilty of other crimes. * * * The proof as to the other crimes may have been inconclusive, but the people had the right to give it, and have it submitted to the jury, with proper instructions, for their consideration."

This court has had occasion to quote this language with approval in the very recent case of People v. Wicks, 11 App. Div. 539–550, 42 N. Y. Supp. 630; and I am unable to see why it is not equally applicable to the case in hand. In a still more recent case it was held by the court of appeals that upon the trial of an indictment for subornation of perjury, where a conspiracy was alleged, evidence of other transactions, otherwise material or relevant, was not inadmissible merely because it tended to prove another crime (People v. Van Tassel, 156 N. Y. 561, 51 N. E. 274); while in the case of Wright v. People, 1 N. Y. Cr. R. 462, the precise question which is here presented appears to have been decided adversely to the contention of the appellant's counsel.

The record before us contains abundant evidence tending to show that the defendant, with his father, conspired to defraud certain insurance companies, by obtaining from them insurance upon buildings to an amount far in excess of the value of the property insured, and

that they thereafter set fire to and destroyed the property insured. Having made this proof, it is difficult to see why, within the principle of the cases cited, the people would not have been entitled to follow it with evidence of similar transactions occurring at other times within the same year, for the purpose of establishing the fraudulent intent of the defendant. And, if so, the learned prosecuting attorney transgressed no rule of propriety in stating to the jury that he expected to make proof of those facts; nor did the learned trial judge commit any error in refusing to sustain the objection to such statement, for, although he gave no reason for his ruling, it may be safely assumed that, had evidence of this character been offered, the jury would have been instructed as to the purpose, and the only purpose, for which it was received. The judgment and order appealed from should be affirmed.

Judgment of conviction and order affirmed, and judgment certified to county court, pursuant to section 547 of the Code of Criminal Procedure. All concur, except HARDIN, P. J., and FOLLETT, J., dissenting.

HARDIN, P. J. (dissenting). By the appeal book it appears that, when the jury was completed, the assistant district attorney, during his opening, said to the jury, viz.:

"We shall show you, if permitted, that before this fire which occurred at the boulevard, in which some seven buildings owned by the mother and family of this defendant were burned, many other buildings which this defendant had assisted in erecting, or in which he was interested, were destroyed in a similar manner. Within less than a year before the fire on the boulevard—"

Thereupon the counsel for the defendant "objected as improper," and thereupon the objection was overruled, and an exception was taken. The assistant district attorney, who was opening the case to the jury, continued: "If the counsel insists upon it, I will not go into that matter at this time." When the objection was made to the statement made in the opening, the court overruled the objection, thereby holding that it was proper that such a statement be made to the jury during the opening. The language used tended to indicate that the prosecution could prove that the defendant had been guilty of a similar crime to the one embraced in the indictment preceding the occasion of the fire mentioned in the indictment. It seems that the assistant district attorney, having obtained the ruling of the court in the presence of the jury that the statement, so far as he had made it, was proper, desisted himself from further statement, acting perhaps upon the consciousness that the statement he had already made was improper, although the court had, by its ruling, sustained the course adopted in referring to antecedent fires. The improper statement made by the assistant district attorney to the jury may have influenced it in the determination of the principal questions submitted to them at the close of the trial. To establish the defendant's guilt, the people resorted to circumstantial evidence, with a view of establishing that there was a conspiracy between the defendant and several other parties to burn the buildings mentioned in the indictment, with a view to obtain the insurance resting upon

the buildings. Whether that conspiracy was established depended upon grouping the circumstances that were offered tending to support the allegation that there was a conspiracy. Confessedly, the defendant was not at the place of the fire on the night of the fire. Instead, he was at the city of Rochester, some distance from Greece, where the buildings that were burned were located. Doubtless, the reference made to the alleged connection of the defendant with antecedent fires was the result of the zeal of the counsel in behalf of the prosecution. If the trial judge, instead of having sustained the irregular course adopted in the opening, had promptly checked it, or, when the objection was raised, sustained it, and thereby indicated to the jury that that part of the opening which was objected to was improper, it might not have had any impression upon the jury; but, under the circumstances, the judge, having overruled the objection, impliedly said, in the presence of the jury, that the statement made by counsel was proper, and the impression left upon the jury by the opening and by the ruling may have been prejudicial to the rights of the defendant.

In the course of the opinion delivered in Halpern v. Railroad Co., 16 App. Div. 90, 45 N. Y. Supp. 134, statements made by plaintiff's counsel to the jury of facts which had no support in the evidence, and tended to inflame the minds of the jurors, were not condemned by the court at the trial, and it was held that an error was committed; that it was the duty of the trial court to prevent improper and immaterial matter from being presented to the jury. Near the close of the opinion in that case it was said that:

"Possibly, this decision may have a salutary influence in restraining the introduction by counsel, in their summing up, of matters not connected with the issues on trial, to the end that the rights of parties litigant may be protected, and not abused, and that juries may be limited to the consideration of evidence affecting the issues submitted to them, and to that evidence alone."

If the conviction in this case be reversed, it may deter overzealous counsel for prosecutions from interjecting, by way of opening or otherwise, during the progress of a trial, matters irrelevant or improper. Permitting improper matter to be presented to a jury during a trial was the subject of examination and condemnation in Griebel v. Printing Co., 24 App. Div. 288, 48 N. Y. Supp. 505. Criminal trials should be conducted in accordance with the law and the rules of evidence, and extraneous matters calculated to prejudice the accused should be excluded. No speculation should be indulged in, in respect to the extent of the injury done to the defendant by assertions in the presence of the jury, with the approbation of the court, of improper matters. The objection made by the learned counsel for the defendant was improperly overruled, and the exception taken to such ruling presents an error which ought not to be disregarded.

The conviction, judgment, and orders should be reversed, and a new trial ordered in the county court of Monroe county.

FOLLETT, J., concurs.